Chris WOLFF; Ruth A. Wolff; Melissa A. Wolff and Julie M. Wolff, Minors, By and Through their Guardian ad litem; Ruth A. WOLFF; Kenneth Kempf; and Don Romeo Agency, Inc., Plaintiffs and Appellants,

v.

ROYAL INSURANCE COMPANY OF AMERICA; Schenck Insurance Agency, Inc.; and Kenneth F. Schenck; Defendants and Appellees.

Nos. 17073, 17087.

Supreme Court of South Dakota.

Argued Nov. 27, 1990.

Decided June 12, 1991.

Douglas Fosheim, Fosheim & Haberstick, Huron, Tim Engler and Gregory D. Barton, Harding & Ogborn, Lincoln, Neb., for plaintiffs and appellants.

Gary P. Thimsen, Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendants and appellees Schenck Ins. Agency and Kenneth Schenck.

Michael J. Schaffer, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee Royal Ins. Co.

HURD, Circuit Judge.

## FACTS/PROCEDURAL HISTORY

An accident occurred while workers were dismantling the stage following Wayne Newton's performance at the 1983 South Dakota State Fair. A boom truck collapsed and injured two workers, Chris Wolff (Wolff) and Kenneth Kempf (Kempf). Kempf suffered a broken arm and Wolff was seriously injured and is now permanently disabled. Don Romeo (Romeo) and his son Bob Romeo own Don Romeo Agency, Inc. (Romeo Agency) which books entertainment for special events and was entertainment director for the 1983 South Dakota State Fair. Romeo attended the Wayne Newton concert and thus became aware of the accident. He did not immediately report the accident to his insurance agent Kenneth Schenck (Schenck) or his insurance carrier Royal Insurance (Royal) because he did not believe his agency had any liability for the accident.

Wolff and Kempf each filed a lawsuit in United States District Court in July, 1984 against Romeo Agency; Flying Eagle, Inc., Wayne Newton's production company (Flying Eagle); Pittman Manufacturing Company, the boom truck manufacturer (Pittman); and Four Star Productions, responsible for additional spotlights used at the concert (Four Star). Don and Bob Romeo also own Four Star. The district court consolidated the actions and also allowed other defendants to be joined, including a local and international union of stage hands.

Flying Eagle was granted summary judgment in federal district court and several other defendants settled with Wolff and Kempf. As a result, a few weeks before the scheduled July 30, 1987 trial date, only Pittman, Four Star, and Romeo Agency remained as defendants. In June 1987, Pittman and Four Star agreed to each pay $175,000 to settle the lawsuit. As the only remaining defendant, Romeo Agency offered to settle for $10,000. Wolff and Kempf demanded $200,000. After further negotiations, Wolff and Kempf offered full settlement in exchange for payment of $25,000 on condition that Romeo Agency provide proof that it was uninsured and unable to satisfy a larger judgment. Counsel for Romeo Agency telephoned Schenck and was informed that Romeo Agency was named as a co-insured on a policy of insurance issued by Royal to a company known as Mid–America. On June 24, Romeo Agency requested that Royal acknowledge coverage and undertake the defense of the district court lawsuit. Royal was given eight hours to decide and was provided a copy of the Kempf complaint but was not given a copy of the Wolff complaint. Royal denied coverage asserting that Romeo Agency failed to give timely notice of the claim as required by the terms of the insurance policy. The next day, Romeo Agency settled with Wolff and Kempf by agreeing to pay $25,000 and stipulating to a judgment in the amount of $275,000 in the District Court of South Dakota, Southern Division. Romeo Agency also assigned to Wolff and Kempf any and all rights it may have under the insurance policy issued by Royal. In exchange, Wolff and Kempf covenanted not to execute on the $275,000 judgment.

Wolff, Kempf and Romeo Agency filed suit in circuit court against Royal and Schenck. Wolff and Kempf sought to recover from Royal on the $275,000 district court judgment. Romeo Agency sought reimbursement for litigation costs it expended in defending the district court action. The trial court held that Wolff and

Kempf could not recover from Royal on the district court judgment because it was obtained in bad faith and through collusion with Romeo Agency. We affirm the trial court on this issue. The trial court concluded that Romeo Agency was entitled to recovery of their litigation costs for defending the district court action. We reverse the trial court on this issue because the trial court erroneously held that Romeo Agency's oral notice was sufficient under the terms of the insurance policy.

## DECISION

WHETHER THE TRIAL COURT WAS CLEARLY ERRONEOUS IN FINDING THAT THE SETTLEMENT BETWEEN WOLFF AND KEMPF AND ROMEO AGENCY WAS UNREASONABLE, COLLUSIVE AND REACHED IN BAD FAITH.

█ In the circuit court action underlying this appeal, Royal and Schenck attacked the federal district court judgment alleging that the settlement between Romeo Agency and Wolff and Kempf was a result of bad faith and collusion.[1]

As a general rule, when an insurer declines coverage, an insured may settle rather than proceed to trial to determine its legal liability. *Luria Bros. & Co. v. Alliance Assur. Co., Ltd.,* 780 F.2d 1082, 1091 (2nd Cir.1986). However, the amount must be reasonable in view of the size of possible recovery and degree of probability of claimant's success against the insured. *Id.* The insurer's denial of coverage must be unjustified before policy provisions, such as a cooperative clause, are considered waived. 44 Am.Jur.2d *Insurance* § 1421. The Nebraska courts have held:

> If an insurer waives its right to defend, this leaves the insured free to defend the action to judgment or, in good faith, to make such settlement as ordinary and reasonable prudence and caution might indicate to be advisable.

*Otteman v. Interstate Fire & Casualty Co.,* 172 Neb. 574, 111 N.W.2d 97, 102–3 (1961).

█ The trial court concluded that Romeo Agency's acceptance of Wolff's and Kempf's covenant not to execute was a sham and breached the cooperation clause in the policy. This conclusion is supported by the following evidence:

(1) neither Romeo, nor the attorneys involved, considered that Romeo Agency had a great amount of liability exposure concerning the accident and that, based on the testimony, Romeo Agency's potential liability was much less than that of Pittman or Four Star. Yet, Romeo consented to a judgment of $100,000 more than the settlement reached with Pittman and Four Star;

(2) Royal was given less than eight hours to determine coverage;

(3) the details of the ultimate settlement were cemented before the denial of coverage by Royal, but no information concerning this settlement was shared with Royal;

(4) Wolff's complaint was not forwarded to Royal;

(5) no mention of the parties who had settled nor the amounts of the settlement was brought to Royal's attention;

(6) the liability exposure was not presented;

(7) while the $25,000 settlement was conditioned upon proof of no insurance, the prior $200,000 offer (which was $75,000 less than the amount of the stipulated judgment) had no such limitation.

The evidence before the trial court supports its conclusion that Royal's denial of coverage in June 1987 was justified and the ultimate settlement was not one of reasonable prudence. Accordingly, the trial court's determination was not clearly erro-

---

**1.** A consent judgment is subject to collateral attack when the facts demonstrate that the judgment or settlement was entered into fraudulently, collusively or in bad faith. *Metcalf v. Hartford Accident & Indemnity Company,* 176 Neb. 468, 126 N.W.2d 471 (1964); *see also Frazier, Inc. v. 20th Century Builders, Inc.,* 188 Neb. 618, 198 N.W.2d 478 (1972). The parties stipulated that Nebraska law would apply to the substantive issues in this matter.

neous and we affirm its determination that the stipulated judgment was unreasonable and arrived at in collusion and bad faith.

WHETHER THE TRIAL COURT WAS CLEARLY ERRONEOUS IN FINDING THAT ORAL NOTICE WAS PROVIDED TO ROYAL IN JULY 1984.

██ Royal contends on notice of appeal that the trial court was clearly erroneous in determining that it received oral notice of the claim against the insurance policy in July 1984. For the following reasons we conclude that the trial court's finding on this issue was not clearly erroneous.

Romeo testified that he contacted Schenck by telephone in July 1984 and briefly discussed the accident and Schenck advised him that there was no insurance coverage. The trial court heard the evidence, judged the credibility of the witnesses, and determined that Romeo Agency had provided *oral* notice to Schenck in July 1984. On appeal, Schenck and Royal argue strenuously that Romeo's testimony was not believable. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *In Interest of A.D.*, 416 N.W.2d 264 (S.D.1987). Neither Royal nor Schenck has demonstrated that the trial court's factual findings on this issue were clearly erroneous. *Bachand v. Walker,* 455 N.W.2d 851 (S.D.1990); *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970); SDCL 15–6–52(a). Accordingly, we affirm the lower court's finding that oral notice was provided to Royal in July 1984.

WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE ORAL NOTICE PROVIDED IN JULY 1984 WAS SUFFICIENT UNDER THE TERMS OF THE INSURANCE POLICY.

██ The trial court also found that when Schenck was contacted in June 1987, shortly before the trial was to begin, he readily acknowledged that a policy of insurance existed. Romeo Agency demanded that Royal decide within eight hours whether

the policy provided coverage for the accident. Operating within Romeo Agency's time frame, Royal denied coverage claiming that Romeo Agency failed to provide timely and sufficient notification to Royal of the insurance claim.

This Court will overturn the trial court's findings only when, after a review of all the evidence, the Court is left with a definite and firm conviction that a mistake has been made. *Proceedings for Dep. in Court of Monies,* 417 N.W.2d 187 (S.D.1987). Based on the evidence and the record viewed in its entirety, a definite and firm conviction exists that even though Romeo Agency contacted Schenck in July 1984, the information he provided was insufficient to satisfy the notice provisions of the Royal policy requiring;

> written notice containing particulars sufficient to identify the insured and also reasonable obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of the available witnesses shall be given ... as soon as practicable.

Romeo failed in July 1984 to tell Schenck the amount of the lawsuit or the names of the parties. Romeo also testified he knew that he was also co-insured on the policy issued to Mid–America. Yet, he did not make reference to this policy following Schenck's statement that there was no insurance.

In interpreting the contract, as a matter of Nebraska law, "a forfeiture will not be declared *unless* the contract *specifically provides for such forfeiture."* George v. Aetna Casualty & Surety Co.,* 121 Neb. 647, 655, 238 N.W. 36, 39 (1931) (emphasis added); *Ach v. Farmers Mutual Insurance Co. of Nebraska,* 191 Neb. 407, 215 N.W.2d 518 (1974) (holding that "as soon as practicable" language in policy meant with reasonable celerity and with reasonable and proper diligence and depended on facts and circumstances of the case).[2]

---

**2.** *Ach* disapproves of the *George* case to the extent that the court in *George* used a Nebraska statute "as a makeweight argument supporting its opinion, but we did not there really analyze

or consider the meaning of the statute." *Ach,* 215 N.W.2d at 520. In *First Sec. Bank v. New Hampshire Ins.,* 232 Neb. 493, 441 N.W.2d 188 (1989), the *Ach* decision is quoted stating that

Accordingly, the trial court erred as a matter of law holding that the July 1984 oral notice was sufficient under the terms of the insurance policy. *Permann v. Dept. of Labor, Unemp. Ins. D.,* 411 N.W.2d 113 (S.D.1987). Since Romeo Agency failed to provide sufficient notice as required under the insurance policy, Royal Insurance had no obligation to undertake Romeo Agency's legal defense in the district court action. Consequently, Romeo Agency was not entitled to recover its litigation expenses from Royal. The trial court's judgment in favor of Romeo Agency is reversed.

## OTHER ISSUES

As in other cases that have been brought to this Court, we have considered the other issues raised and find them to be without merit or moot. *Fort Pierre v. United Fire and Cas. Co.,* 463 N.W.2d 845 (S.D.1990).

## SUMMARY

The trial court's finding that the settlement between Wolff and Kempf and Romeo was unreasonable, collusive, and conducted in bad faith is affirmed. Upon review of the clear language of the policy and the above authority we hold that the trial court erred in concluding that the oral notice Romeo Agency provided to Schenck in July 1984 was sufficient. As a result, the trial court's judgment in favor of Romeo Agency ordering reimbursement for litigation costs in the district court action is reversed.

MILLER, C.J., HENDERSON, J., and MORGAN, Retired Justice, concur.

SABERS, J., concurs in part and dissents in part.

the Nebraska insurance statute (Neb.Rev.Stat. § 44–358 (Reissue 1988))

> does not deny the insurer the right to rely upon the conditions of its policy which the insure[d] is required to perform as a condition of recovery after the loss has occurred. It relates to the question of recovery after the loss has occurred. It relates to the question of a recoverable loss and not to the question of procedure to be followed in collecting for the loss after it has occurred.

*First Sec. Bank,* 441 N.W.2d at 196.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted did not participate.

HURD, Circuit Judge, for WUEST, J., disqualified.

SABERS, Justice (concurring in part and dissenting in part).

The majority opinion reverses the trial court on Issue 3 based on insufficiency of notice to Royal without addressing or even mentioning the basis on which the trial court decided Issue 3, waiver. This is poor appellate practice which is, to my knowledge, unprecedented.

During the July 1984 telephone conversation, Don Romeo provided Schenck, and thereby Royal, with all the information Schenck needed concerning the accident and the claims of Wolff and Kempf in the underlying lawsuit to enable Schenck, for Royal, to deny the claim. The trial court's findings of fact are as follows:

> 28: Don Romeo contacted Schenck by phone in July 1984 following receipt of the summons and complaints in the underlying action.

> 31: Schenck informed Romeo that, first of all, there was no insurance to cover the Agency and, secondly, that even if there were insurance, because the State Fair was not listed as a scheduled event on the policy, no coverage would be provided.*

> 33: Schenck consistently advised anyone who called that the Royal policy required a listing of scheduled events before coverage was provided, however, this apparently was not true concerning the Romeo agency.

* Finding of Fact No. 39: When Don Romeo called Schenck in July 1984, following service of lawsuit papers, he did not tell Schenck the amount of the lawsuit nor the names of the parties and was not sure if he told Schenck that he had been sued. Romeo spoke briefly about the accident at the State Fair in Huron and Schenck immediately advised Romeo that there was no coverage; further that even if there was coverage Romeo Agency had not provided a list of the scheduled events beforehand which was required under the policy.

34: Schenck was not correct in his belief that an event must be scheduled before coverage was provided.

38: Schenck had the authority from Royal to receive notice of losses and to submit proofs of loss.

The trial court's conclusions of law are:

13: The oral notice by Don Romeo to Schenck in [July] 1984 was notice to Royal.

14: Schenck's actions in 1984 denying coverage were unjustified.

15: Schenck's acts and the information provided to Don Romeo in July 1984 are binding on Royal.

16: Royal, by virtue of Schenck's denial of coverage, waived the right to raise the provisions of its policy regarding the obligation to give written notice of an accident and other information as soon as practicable and the obligation of the insured to immediately forward suit papers.

In other words, Royal, through Schenck, had "ample notice to permit it to take any and all necessary steps to protect its interest." *Iowa Mut. Ins. Co. v. Meckna,* 180 Neb. 516, 144 N.W.2d 73, 80 (1966). Royal was not prejudiced by the lack of written notice caused by its own incorrect advice to Romeo.

Surprisingly, under Issue 2 on whether Royal got notice, the majority opinion states:

Romeo testified that he contacted Schenck by telephone in July 1984 and briefly discussed the accident and Schenck advised him that there was no insurance coverage. The trial court heard the evidence, judged the credibility of the witnesses, and determined that Romeo Agency had provided oral notice to Schenck in July 1984. On appeal, Schenck and Royal argue strenuously that Romeo's testimony was not believable. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony.... Neither Royal nor Schenck has demonstrated that the trial court's factual findings on this issue were clearly erroneous. Accordingly, we affirm

the lower court's finding that oral notice was provided to Royal in July 1984. (Citations omitted).

By reversing Issue 3 on the sufficiency of the notice to Royal, the majority opinion is doing indirectly what it hesitates to do directly. The fact is that Schenck's wrongful denial of coverage prevented Romeo's disclosure of further information and his forwarding of the summons and complaint. This excuses Romeo's failure to provide additional information and constitutes a waiver of "the right to raise the provisions of its policy regarding the obligation to give written notice of an accident and other information as soon as practicable and the obligation of the insured to immediately forward suit papers," as the trial court correctly concluded. *See* Conclusion of Law No. 16.

A provision in a[n] ... insurance policy as to notice of loss ... requires that reasonable information be given to the insurance company ... and such a provision should be construed with great liberality.... Such a provision is for the benefit of the insurance company and can be waived by it.... An insurance company may be estopped from denying liability where, by its course of dealing and the acts of its agent, it has induced the insured to pursue a course of action to his detriment.

*Keene Coop. Grain & Supply Co. v. Farmers Union Ind. Mut. Ins. Co.,* 177 Neb. 287, 128 N.W.2d 773, 777 (1964) (citations omitted).

Therefore, the majority opinion wrongfully reverses the trial court on Issue 3, and I respectfully dissent therefrom. The trial court should be affirmed on all issues.